IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CA No.: 1:23-cv-00585

| | | |
|---|---|---|
| TAMEKA FERGES and DARRICK PAYLOR, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| *Plaintiffs,* | ) ) | |
| v. | ) ) | **PLAINTIFFS' COLLECTIVE AND CLASS ACTION COMPLAINT** |
| GKN DRIVELINE NORTH AMERICA, INC., | ) ) ) ) | |
| *Defendant.* | ) | |

COME NOW, Plaintiffs Tameka Ferges and Darrick Paylor, on behalf of themselves and all others similarly situated[1], by and through undersigned counsel, and hereby set forth this collective action for violations of the Fair Labor Standards Act under § 216(b), and a representative action under the North Carolina Wage and Hour Act pursuant to Fed. R. Civ. P. 23, against Defendant GKN Driveline North America, Inc. ("Defendant"), and allege as follows:

## PRELIMINARY STATEMENT

1.      Plaintiffs, on behalf of themselves and all others similarly situated, bring this action against GKN Driveline North America, Inc., ("GKN" or "Defendant") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, *et seq*., for unpaid overtime compensation, unpaid wages, and related penalties and damages.

---

[1] Plaintiffs represent individuals employed at Defendant GKN's Roxboro facility.

1

2.     Plaintiffs consist of current and former employees working at Defendant GKN's manufacturing facility in Roxboro, North Carolina. Defendant has a policy, pattern, or practice of failing to pay employees for all scheduled and overtime hours worked (even though such hours were properly recorded), and failing to pay employees all earned, promised, and accrued wages.   In particular, throughout the relevant period, Defendant has maintained a corporate policy and practice of rounding or shaving Plaintiffs' hours worked to scheduled shift times and failing to compensate employees for all hours worked, including mandatory pre-shift and post-shift work, as well as required work performed during scheduled meal breaks, and failing to compensate employees at the promised rate for hours worked less than 40 per week and/or overtime rate for all hours worked in excess of forty (40) per week,

3.     Plaintiffs bring this action for violation of the FLSA as a collective action, pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of the following class:

> All individuals who were, are, or will be employed at Defendant GKN's Roxboro, North Carolina facility on the manufacturing floor in non-managerial positions who were subjected to a rounding and/or time shaving policy, and as a result of such policies, were not compensated for all of their statutory overtime hours worked above forty (40) per week any time within three years prior to the commencement of this action, through the present.

4.     Defendant's pay practices and policies are in direct violation of the FLSA's statutory required overtime; and therefore Plaintiffs, on behalf of themselves, and all others similarly situated, seek statutory overtime wages and the appropriate premium rates for all overtime work required, suffered, or permitted by Defendant, liquidated damages and/or

other damages, attorneys' fees, costs, and expenses incurred in this action, pursuant to 29 U.S.C. § 216(b).

5.    Plaintiffs also bring this action, on their own behalf, and as representatives of similarly situated current, former or future manufacturing employees, employed by Defendant at GKN's manufacturing facility in Roxboro, North Carolina, under the NCWHA. Plaintiffs, who are North Carolina residents and who worked for Defendant in Roxboro, North Carolina, assert that they and the putative class, who work or worked in Roxboro, North Carolina for Defendant, are entitled to compensation for all work performed for Defendant before, during, and/or after their scheduled shift. Additionally, whether the workweek totaled greater or fewer than forty (40) hours, compensation at the appropriate regular and overtime rate for all hours worked in excess of forty (40) per week, for an equal amount of liquidated damages, prejudgment interest, [2] and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.13, 95-25.6, 95-25.22(a), (a1), and (d).

6.    Plaintiffs seek class certification under Rule 23 of the Federal Rules of Civil Procedure for the following class of Defendant's employees in North Carolina:

> Individuals who were, are, or will be employed at Defendant GKN's Roxboro, North Carolina facility on the manufacturing floor in non-managerial positions, subjected to either a rounding and/or time shaving policy of their actual hours worked, and/or were subjected to an automatic 30-minute meal break deduction policy, and who have or may have worked through or during unpaid meal breaks without compensation at least once, at any time within two years prior to the commencement of the *Mebane* action, through the present.

---

[2] Pursuant to § 95-25.22(a), prejudgment interest is available under the NCWHA, but not under the FLSA.

7. Defendant's practice of failing to compensate Plaintiffs at the appropriate promised straight time and overtime rates and failure to compensate Plaintiffs for all compensable work violates Plaintiffs' rights under the NCWHA for failing to fulfill its promised wages as laid out in writing via a handbook, earning statement, or job announcement/description, and consistent with any promised premium and/or overtime written policy for hourly employees. The FLSA's Savings Clause pursuant to § 218(a) of the FLSA provides that employers should comply with the more stringent between the FLSA and state wage and hour laws. Because the NCWHA provides for more stringent protections than the FLSA, the FLSA does *not* preempt the NCWHA.

## PARTIES

8. Plaintiff Tameka Ferges is an adult citizen and resident of the State of North Carolina, residing in Roxboro, North Carolina

9. Plaintiff Darrick Paylor is an adult citizen and resident of the State of North Carolina, residing in Timberlake, North Carolina.

10. Defendant GKN is organized under Delaware law and has its principal place of business at 2220 North Opdyke Road, Auburn Hills, MI 48326.

11. During the relevant time period, Defendant operated three regional facilities, including GKN Driveline –Sanford, GKN Driveline – Roxboro, and GKN Driveline – Sanford.

12. Upon information and belief, Defendant's GKN Driveline – Roxboro is located at 1190 Roby Barton Road, Timberlake, North Carolina, 27583.

4

13.     Plaintiff Ferges worked for Defendant in its GKN Roxboro location as a non-exempt, hourly paid Line Feeder, and later Senior Assembly Technician from approximately November 26, 2012 until May 2022.

14.     Plaintiff Paylor worked for Defendant in its GKN Roxboro location as a non-exempt, hourly paid Senior Assembly Technician, and later, as a Maintenance Technician, from approximately 2000 to May 29, 2019.

15.     The FLSA collective action putative Plaintiffs consist of individuals who have worked for Defendant at its Roxboro location, who were non-exempt employees paid an hourly wage, and who were not properly paid their overtime given Defendant's policy and practice of rounding down or shaving the number of hours employees worked and properly recorded pursuant to Defendant's strict policy that all employees accurately record all hours worked, including any time spent in any pre and/or post shift activities.

16.     Plaintiffs bring this action on their own behalf and, pursuant to 29 U.S.C. § 216(b), as representatives of a proposed collective action of similarly situated employees.

## JURISDICTION AND VENUE

17.     This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201, *et seq*.

18.     The United States District Court for the Middle District of North Carolina has personal jurisdiction because Defendant conducts business in Person County, North Carolina, which is located within this District.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendant conducted business within the Middle District of North Carolina, and the

substantial part of the events or omissions giving rise to these claims occurred in this District. The claims for violations of the NCWHA are based upon the statutory law of the State of North Carolina.

20. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 over the pendent state law claims under the NCWHA.

21. All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness and convenience for the parties.

22. Upon information and belief, during the time period relevant to this action, Defendant was an employer that employed Named and Putative Plaintiffs, pursuant to the FLSA and the NCWHA, in that Defendant, or its agents, held or implemented the power, *inter alia*, to control the work performance of Named and Putative Plaintiffs, and Defendant received the benefit of Named and Putative Plaintiffs' labor.

## COVERAGE

23. At all times material to this action, Defendant has acted, directly or indirectly, in the interest of an employer or joint employer with respect to Named and putative Plaintiffs.

24. At all times relevant, Defendant was an employer within the defined scope of the FLSA, 29 U.S.C. § 203(d) and the NCWHA, N.C. Gen. Stat. § 95-25.2(5).

25. At all times material to this action, Named and putative Plaintiffs were individual employees within the scope of the FLSA, 29 U.S.C. §§ 206 and 207.

26. At all times material to this action, Defendant was an enterprise engaged in related activities performed through a unified operation or common control for a common

6

business purpose, as defined by the FLSA, 29 U.S.C. § 203(r).

27.     At all times material to this action, Defendant was an enterprise engaged in commerce or the production of goods for commerce as defined by the FLSA, 29 U.S.C. §§ 203(s), 203(r), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

28.     Defendant designs, manufactures and services systems and components for leading aircraft, vehicle and machinery manufacturers.  Defendant has a focus in developing, building and supplying an extensive range of automotive driveline products and systems, for luxury cars to low-cost cars.

**Plaintiff Ferges' Employment Duties, Shift, and Pay Rate:**

29.     Plaintiff Ferges began work for GKN at its Roxboro plant in 2012 and resigned in 2022. She was hired as a full-time Blind Feeder. She subsequently became Team Lead, and then Senior Assembly Technician.

30.     Plaintiff Ferges' duties included overseeing various cells and managing departments to ensure they were running according to Defendant's standards; if they were not, she assisted in the production work herself.

31.     Plaintiff Ferges worked the third shift through 2020, which was scheduled

7

from 11:00 PM to 7:30 AM, Monday through Friday, as well as approximately two (2) weekends per month; she was scheduled for a thirty (30) minute unpaid lunch break and two (2) paid ten (10) minute breaks each day. From 2020 through 2022, she worked a twelve (12) hour shift from 7:00 PM to 7:00 AM. Plaintiff Ferges' final pay rate was approximately $25 per hour.

**Plaintiff Paylor's Employment Duties, Shift, and Pay Rate:**

32.     Plaintiff Paylor began work for GKN at its Roxboro plant in 2000 and resigned in 2019. He was hired as a full-time Operator. He subsequently became Senior Assembly Technician, and then Maintenance Technician.

33.     Plaintiff Paylor's duties as a Senior Assembly Technician included managing his cells, part of which entailed managing shift time of his cells' employees via Kronos.

34.     Plaintiff Paylor worked first shift through 2016, which was scheduled from 7:30 AM to 4:00 PM, five (5) to seven (7) days per week. From 2016 through 2019, he worked the third shift, which was scheduled 7:00 PM to 7:00 AM, seven (7) days per week. His final rate of pay was approximately $27.50 per hour.

## WAGE RELATED FACTUAL ALLEGATIONS

35.     Upon information and belief, Defendant GKN has more than 10,000 employees at approximately fifty (50) locations around the United States. Six of these locations are in North Carolina, of which five specialize in driveline manufacturing.

36.     Defendant GKN employs machinists, line inspectors, and similar positions on its manufacturing floors to produce its products.

8

37.     Defendant GKN compensates machinists, line inspectors, and other manufacturing floor employees on an hourly basis. Defendant GKN classifies these employees as hourly non-exempt under the FLSA.

38.     During the relevant time period, Defendant required employees working on the manufacturing floor to work scheduled shifts, typically eight and one-half (8.5) hour shifts and up to twelve (12) hour shifts, five (5) days per week, with what should have been a thirty (30) minute lunch break each day. Some employees were required to work up to twelve (12) hour shifts and up to seven (7) days a week, contingent upon Defendant's production demands. Defendant often required employees to work mandatory overtime during seasons of heavy demand, such that employees could work their scheduled shift six (6) to seven (7) days per week during busy months.

39.     During the relevant period, to satisfactorily perform their job duties and meet work production demands, manufacturing floor employees were required to perform work-related duties beyond their scheduled shift times, including before their shift start time, during their scheduled meal breaks, and after the end of their shift end time.

**Plaintiffs' Pre-Shift Activities**

40.     Specifically, manufacturing floor employees were required to arrive prior to the start of their scheduled shift, and once clocked in, were ordered to perform essential job duties including, but not limited to, checking the machines, preparing tools, setting up the machines with required water temperatures, ensuring the work area is clean, and coordinating duties with other shifts.

41. For example, before the start of her shift, Plaintiff Ferges, as a senior assembly technician, was required to have "handoff meetings" with previous shifts with other supervisors to determine what tasks each person on her team would be assigned and the work that needed to be done.

42. For example, before the start of his shift, Plaintiff Paylor was required to meet with other supervisors to discuss Defendant's timekeeping policies; he also was required to arrive prior to the start of his shift, up to four (4) hours early, to train other employees.

43. This mandated pre-shift work was required by Defendant, as meeting production goals was tantamount, after employees clocked in but before their shifts began.

**Plaintiffs' Post-Shift Activities**

44. Similarly, manufacturing employees at the Roxboro plant were required to stay after the end of their shift and continued working beyond the end of their shift due to production demands.

45. Plaintiff Ferges stayed after her scheduled shift to have handoff meetings and do lost-time analysis.

46. Plaintiff Paylor stayed after his scheduled shift to train employees and clean his station.

**Plaintiff's Lunch Break Activities**

47. In order to meet production demands, including ensuring machines remained operating at all times, Plaintiffs often worked through their lunch break.

48.     In particular, Plaintiff Ferges was typically unable to take a full thirty (30) minute lunch break, and instead, took an approximately fifteen (15) minute lunch break.

49.     Plaintiff Paylor worked through his meal break approximately three (3) times per week because he was required to fill in on the floor or cover machines when operators went to lunch.

50.     As a result of these activities, employees stayed past their scheduled shift end time, engaged in required post-shift activities—pursuant to Defendant's policy and practice of requiring employees to complete maintenance on machines among other activities—and then clocked out, consistent with Defendant's policy and practice that all employees were required to properly record all hours worked. Nevertheless, Defendant did not pay Plaintiffs for such time.

51.     Specifically, pursuant to Defendant's Kronos Rounding Policy, Defendant rounded down Plaintiffs' hours worked to Plaintiffs' scheduled shift times and rounded any lunch break up to thirty (30) minutes, automatically deducting 30 minutes from employees' total daily hours worked, irrespective of whether employees took a lunch break or not, which resulted in an organizational practice of underpaying its employees.

52.     Defendant's parent company GKN's unlawful compensation practices, (including deducting a rounded thirty (30) minutes from employees shifts), were also the subject of a class action, filed on December 16, 2016, in the case of *Ismael Diaz v. GKN Aerospace CHEM-TRONICS Inc.*, No. 37-2016-00044445-CU-OE-CTL (Cal. Super. 2016). In that action, the parties reached a settlement, which was ultimately approved by the court.

53.     Despite the *Diaz* litigation, Defendant continued to carry out unlawful pay practices, as alleged herein.

54.     Defendant's failure to compensate for all properly recorded hours worked, including all work performed from the time Plaintiffs clocked in through the time Plaintiffs clocked out, and to pay employees all promised, earned and accrued wages, has affected all putative Plaintiffs similarly.

## FLSA COLLECTIVE ACTION ALLEGATIONS

55.     Named Plaintiffs bring the First Count of the instant Complaint as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of themselves and all similarly situated employees.

56.     Members of the FLSA class are similarly situated.

57.     Members of the FLSA class have substantially similar job requirements and pay provisions, and are subject to common practices, policies, or plans that fail to compensate them for all work performed and fail to compensate them at the appropriate overtime rate for all hours worked in excess of forty (40) per week.

58.     There are numerous (in excess of 150) similarly situated current and former manufacturing floor employees that fall within the scope of the aforementioned FLSA class.

59.     These similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

60.     Members of the proposed FLSA class, therefore, should be permitted to pursue their claims collectively, pursuant to 29 U.S.C. § 216(b).

61.     Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Plaintiffs.

62.     Named Plaintiffs consent in writing to assert their claims for unpaid wages under the FLSA pursuant to 29 U.S.C. § 216(b).  Named Plaintiffs' signed consent forms are filed with the Court as Exhibits A and B to this Complaint. However, Named Plaintiffs in this action were also opt-in Plaintiffs in the *Mebane v. GKN Driveline North America, Inc.,* No:. 1:18-CV-892-LCB-LPA (January 22, 2021), Dkt. 91-1 (Plaintiff Ferges' Consent to Sue Form); 99-1 (Plaintiff Paylor's Consent to Sue Form).

63.     As this case proceeds, it is likely other individuals who previously filed consent forms in the *Mebane* matter will re-file consent forms and join as opt-in plaintiffs to continue pursuing their claims in this matter.

64.     Named Plaintiffs request that they be permitted to serve as representatives of those who consent to participate in this action, and that this action be conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

## NCWHA CLASS ACTION ALLEGATIONS

65.     Plaintiffs bring the Second Cause of Action of the instant Complaint as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and all similarly situated employees, for relief to redress and remedy Defendant's violations of the NCWHA, N.C. Gen. Stat. § 95-25.1, et seq.

66.     Numerosity:  The proposed class is so numerous that the joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.  While the exact number of class members is unknown to Plaintiffs at this

13

time, upon information and belief, the class comprises more than 150 individuals.

67.   Common Questions Predominate: There is a well-defined commonality of interest in the questions of law and fact involving and affecting the proposed class, and these common questions of law and fact predominate over any questions affecting members of the proposed class individually, in that all putative class members have been harmed by Defendant's failure to lawfully compensate them. The common questions of law and fact include, but are not limited to, the following:

a.   Whether pre-shift work, working "lunch breaks," and post-shift work performed by putative Class Members is compensable under the NCWHA;

b.   Whether Defendant's failure to compensate putative Class Members for all hours worked due Defendant's Kronos rounding system is in violation of the NCWHA;

c.   Whether Defendant failed to compensate putative Class Members at the earned, accrued, and/or promised rate for all hours worked in excess of forty (40) each week pursuant to § 95-25.6; and

d.   Whether Defendant failed to compensate putative NC Class Members for all of their earned, accrued, and/or promised wages, including, but not limited to, straight time and overtime on their regular pay date, in violation of the NCWHA.

68.   Typicality: The claims of Plaintiffs are typical of the claims which could be alleged by any member of the putative Class, and the relief sought is typical of the relief

which would be sought by each member of the class in separate actions. All putative class members were subject to the same compensation practices of Defendant, as alleged herein, of failing to pay employees for all pre-shift and post-shift work, for hours worked in excess of forty (40) each week at the appropriate hourly rate, and for all hours worked at the appropriate hourly rate. Defendant's compensation policies and practices affected all putative class members similarly, and Defendant benefited from the same type of unfair and/or unlawful acts as to each putative class member. Plaintiffs and members of the proposed class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

69.     <u>Adequacy of Representation</u>: Plaintiffs are able to fairly and adequately protect the interests of all members of the proposed class, and there are no known conflicts of interest between Plaintiffs and members of the proposed class. Plaintiffs have retained counsel who are experienced and competent in both wage and hour law and complex class action litigation.

70.     <u>Superiority</u>: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual class members may be small for some in the sense pertinent to the class action analysis, the expenses and burden of individual litigation would make it extremely difficult

or impossible for the individual class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially greater than if the claims are treated as a class action. Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for Defendant, and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they are not parties. The issue in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

71. <u>Public Policy Considerations</u>: Defendant violated the NCWHA. Just as current employees are often afraid to assert their rights out of fear of direct or indirect retaliation, former employees may also be fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class action lawsuits provide class members who are not named in the Complaint a degree of anonymity, which allows for vindication of their rights while eliminating or reducing these risks.

72. Pursuit of this action as a class will provide the most efficient mechanism for adjudicating the claims of Plaintiffs and members of the proposed class.

**COUNT ONE**
**Violation of the Fair Labor Standards Act**
**29 U.S.C. § 207**

**Brought by Plaintiffs on Behalf of Themselves and All Similarly Situated
Employees**

73.     Plaintiffs incorporate by reference all preceding paragraphs as if the same were repeated here verbatim.

74.     At all relevant times, Defendant has been, and continues to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

75.     At all relevant times, Defendant has employed, and continues to employ, "employee[s]," including Named Plaintiffs, and each of the members of the prospective FLSA Class, that have been, and continue to be, engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

76.     At all relevant times, Defendant has had gross operating revenues in excess of $500,000.

77.     The FLSA, pursuant to §§ 206 and 207, requires each covered employer, including Defendant, to compensate all non-exempt employees at a rate of not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of forty (40) hours in a single workweek.

78.     At all relevant times, Defendant, pursuant to their policies and practices, willfully failed and refused to pay for all hours worked to Plaintiffs, including for required pre-shift and post-shift work performed by Plaintiffs.

79.     Defendant's failure to pay Plaintiffs for all hours worked, and at the appropriate overtime rate for hours worked in excess of forty (40) per week, in weeks where

Plaintiffs worked over 40 hours, despite the fact that, upon information and belief, Defendant knew of its obligations under the law, entitles Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages under 29 U.S.C. § 216(b), since Defendant cannot show they acted in good faith, and a three (3) year, rather than two (2) year statute of limitations applies, since Defendant's acts constitute willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).

80.    As a result of Defendant's unlawful acts, Plaintiffs have been deprived of compensation for all required hours worked, and appropriate compensation for all overtime hours worked, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

81.    Plaintiffs and putative plaintiffs each worked more than forty (40) hours in one or more workweeks within the applicable statutory period.

**COUNT TWO**
**Violation of the North Carolina Wage and Hour Act**
**N.C. Gen. Stat. § 95-25.6**
**Brought by Plaintiffs on Behalf of Themselves and All Similarly Situated**
**Employees**

82.    Plaintiffs incorporate by reference all preceding paragraphs as if the same were repeated here verbatim.

83.    The class period for this cause of action is at least two years from the date of the filing of the initial Complaint in *Mebane v. GKN Driveline North America, Inc.,* No:. 1:18-CV-892-LCB-LPA. *See* Dkt. 1.[3]

---

[3] Dkt. 6 (Plaintiff's Motion for Equitable Tolling)

84.     At all relevant times, Defendant has employed, and/or continues to employ, Named and Putative Plaintiffs within the meaning of the NCWHA.

85.     Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.6, it is unlawful for an employer to "suffer or permit" an employee to work without paying all owed, earned, and promised wages, on the employee's regular payday.

86.     Employers must satisfy the notice requirements of N.C. Gen. Stat. § 95-25.13 by ensuring an up-to-date handbook, or other written policies and practices of promised wages are provided to employees in a readily accessible manner.

87.     Acceptable measures of providing employees information about promised wages include "an up-to-date employee handbook or other written statements of policies and practices with regard to promised wages" or through "payroll records, including check stubs, for wages promised in the form of hourly pay or salary or other forms whose terms are readily identifiable from payroll records," and employers are required to pay such promised wages. Notification of Employment, 13 N.C.A.C. 12.0805 (2022).

88.     Additionally, "[a]n employee's signature on an employer's written notice of the promised wages which bears the date on which the employee was provided with the notice shall be presumptive evidence of the employer's notification in accordance with G.S. 95-25.13(1)." Notification at Time of Hiring, 13 N.C.A.C. 12.0804 (2022).

89.     Invariably, ***"[o]nce a promise is made by an employer, that employer must pay all promised wages, including wage benefits, accruing to its employees based on any policy, agreement or practice that the employer has established*.**" *See* North Carolina Department of Labor, *Promised Wages Including Wage Benefits*,

https://www.labor.nc.gov/workplace-rights/employee-rights-regarding-time-worked-and-wages-earned/promised-wages-including.

90.     Moreover, 13 N.C. Admin. Code 12 § .0307(c) provides that any *ambiguous policies* and practices with respect to bonuses, commissions, and other forms of wage *calculation* "shall be construed against the employer and in favor of employees."

91.     Pursuant to the NCWHA, N.C. Gen. Stat. §§ 95-25.13 and 95-25.6, Defendant were required to pay Plaintiffs and putative class members all wages, when due, for all promised earned and accrued regular, straight, and overtime wages of one and one-half times the promised wage rate, which is a part of all the employees' accrued and earned wages, and which should have been paid when due on the employees' regular payday; this requirement is not covered by the overtime provision under the FLSA.

92.     Every employer shall maintain complete and accurate records that document, in relevant part, the hours worked each workweek and all other records required to compute wages. 13 NCAC 12.0801.

93.     Additionally, Defendant was required to provide employees with advanced notice for wage deductions permissible by and in compliance with the NCWHA.

94.     Defendant intentionally refused to pay all wages that accrued on their designated pay days, including wages for *all hours worked*, including pre- and post-shift work, as accurately recorded by Plaintiffs, and as set forth in the preceding paragraphs of this Complaint, to Plaintiffs and putative class members in violation of the NCWHA.

95.     Defendant is not permitted by state or federal law to withhold or divert any portion of Plaintiffs' and class members' wages that are at issue in this Complaint.

20

96.     Defendant was aware that Plaintiffs and putative plaintiffs were not receiving all promised straight-time wages for all hours worked up to forty (40) and promised premium wages for hours worked in excess of forty (40) per week pursuant to the promised straight-time rate and corresponding promised premium rates.

97.     The alleged foregoing conduct constitutes willful violations of the NCWHA, N.C. Gen. Stat. §95-25.1, *et seq*.

98.     Defendant employed Named and Putative Plaintiffs within the State of North Carolina.

99.     At all relevant times, Defendant, pursuant to its policies and practices, failed and refused to pay Plaintiffs all owed, earned, and promised wages, including for all work-related activities performed from the moment they clock in through the moment they clocked out, including, for example, required post-shift work performed by Plaintiffs, and at the appropriate overtime rate that Plaintiffs are lawfully entitled to for hours worked in excess of forty (40) in a single workweek.

100.    Consistent with the above, Defendant's failure to pay Plaintiffs all owed, earned, and promised wages that had accrued on Plaintiffs' designated payday violates N.C. Gen. Stat. §§ 95-25.6, 95-25.13.

101.    As a result of Defendant's unlawful policies and practices, Plaintiffs have been deprived of compensation due and owing.

102.    Defendant's failure to pay Plaintiffs all owed, earned, and promised wages, given that, upon information and belief, Defendant knew of its obligations under the law, entitles Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages,

under N.C. Gen. Stat. § 95-25.22(a1).

103.    As a result of Defendant's unlawful acts, Plaintiffs have been deprived of all compensation due under the law and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.13, 95-25.6, 95-25.22(a), (a1), and (d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, and all those similarly situated, collectively pray that this Honorable Court:

1.    Issue an Order certifying this action as a collective action under the FLSA, and designate Named Plaintiffs as representatives of all those similarly situated under the FLSA collective action;

2.     Designate Plaintiffs as representatives on behalf of all those similarly situated under the NCWHA class and designate the below signed counsel as class counsel;

3.    Award Plaintiffs and all those similarly situated actual damages for all unpaid wages found due, and liquidated damages equal in amount, as provided by the FLSA, 29 U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(a1);

4.    Award Plaintiffs and all those similarly situated pre- and post-judgment interest at the statutory rate, as provided by the FLSA, 29 U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(a);

5.    Award Plaintiffs and all those similarly situated attorney's fees, costs, and disbursements as provided by FLSA, 29 U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(d); and

6.    Grant such further legal and equitable relief as the Court deems necessary and proper in the public interest.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Named Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted this July 14, 2023.

*/s/ Gilda A. Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Hannah B. Simmons (NCSB No. 59579)
**THE LAW OFFICES OF GILDA A.**
**HERNANDEZ, PLLC**
1020 Southhill Drive, Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
hsimmons@gildahernandezlaw.com

*Attorneys for Plaintiffs*