IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CA No.: 1:23-cv-00585-CCE-LPA

| | |
|---|---|
| TAMEKA FERGES and DARRICK PAYLOR, on behalf of themselves and all others similarly situated, | ) ) ) |
| | ) |
| *Plaintiffs,* | ) |
| | ) |
| v. | ) |
| | ) |
| GKN DRIVELINE NORTH AMERICA, INC., | ) ) |
| | ) |
| *Defendant.* | ) |

**<u>PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR AMENDED MOTION FOR CLASS CERTIFICATION UNDER FED. R. CIV. P. 23 AND FOR APPOINTMENT OF CLASS COUNSEL UNDER FED. R. CIV. P. 23(G)</u>**

# TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................... 1

II.   FACTUAL BACKGROUND ...................................................................... 2

      A.    Employees Were Subject to the Same Common Timekeeping
            Practices and Compensation Policies. ............................................. 2

            1.    Defendant's Pre-Shift Timekeeping Policies ..................... 3

            2.    Defendant's Post-Shift Timekeeping Policies ................... 3

            3.    Defendant's Meal Break Policies ....................................... 4

            4.    Defendant's Policies Applied to All Employees Equally, and
                  Employees Performed Similar Job Duties ......................... 5

      B.    Employees Performed Unpaid Work Beyond Scheduled Shift Times. ........ 5

            1.    Employees Performed Pre-Shift Off-the-Clock Work. ..................... 6

            2.    Employees Performed Post-Shift Off-the-Clock Work. ................... 6

            3.    Employees Worked Through All or Part of Unpaid Meal
                  Breaks. ............................................................................... 7

III.  LEGAL ARGUMENT .................................................................................. 8

      A.    Plaintiffs' NCWHA Claims Should Be Certified as a Class Action
            Under Fed. R. Civ. P. 23 (a) and (b)(3). .......................................... 8

            1.    Plaintiffs Satisfy the Rule 23(a) Requirements. ............................... 8

                  i.    The Proposed Classes Are Sufficiently Numerous and
                        Ascertainable .............................................................. 9

                  ii.   The Proposed Classes Satisfy the Commonality and
                        Typicality Requirements. ..................................... 10

                  iii.  Plaintiffs And Their Counsel Will Fairly And
                        Adequately Protect The Interests Of The Classes. ................. 14

            2.    The Proposed Class Satisfies the Requirements of Rule
                  23(b)(3). ............................................................................. 14

Case 1:23-cv-00585-CCE-LPA    Document 129    Filed 12/23/25    Page 2 of 31

i.     Common Questions of Law and Fact Predominate
       Over Any Individual Questions...............................................15

       a.     Pre-Shift OTC Work Class...........................................16

       b.     Post-Shift OTC Work Class........................................17

       c.     Meal Break OTC Work Class .....................................17

       d.     The Proposed Classes Meet the Predominance
              Requirement of Rule 23(b)(3) and Stafford...............18

ii.    A Class Action is the Superior Method for Litigating
       This Matter. ..........................................................................19

3.     Present Counsel Should Be Appointed Class Counsel. ...................20

IV.    CONCLUSION .....................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Sitel Operating Co.*,
    No. 1:16-CV-1051, 2019 WL 13296014 (M.D.N.C. Jan. 24, 2019) ....................... 12, 19

*Alfaro Zelaya v. A+ Tires, Brakes, Lubes, and Mufflers, Inc.*,
    No. 5:13-CV-810, 2015 WL 5703569 (E.D.N.C. Sept. 28, 2015) ........................... 14, 19

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) ..................................................................................................... 15

*Barb v. Heath Consultants, Inc.*,
    No. 1:23-CV-58, 2024 WL 3292835 (W.D. Va. July 3, 2024) ...................................... 18

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
    155 F.3d 331 (4th Cir. 1998) ........................................................................................ 11

*Brown v. Nucor Corp.*,
    576 F.3d 149 (4th Cir. 2009) ........................................................................................ 11

*Ceras-Campo v. WF P'ship*,
    No. 5:10-cv-215-BO, 2011 WL 588417 (E.D.N.C. Feb. 9, 2011) ................................. 20

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
    177 F.R.D. 54 (D. Mass. 1997) ..................................................................................... 20

*EQT Prod. Co. v. Adair*,
    764 F.3d 347 (4th Cir. 2014) .......................................................................................... 9

*Gaxiola v. Williams Seafood of Arapahoe, Inc.*,
    776 F. Supp. 2d 117 (E.D.N.C. 2011) ....................................................................... 8, 10

*Gen. Tel. Co. of the Southwest v. Falcon*,
    457 U.S. 147 (1982) ................................................................................................ 11, 13

*Gunnells v. Healthplan Servs., Inc.*,
    348 F.3d 417 (4th Cir. 2003) ........................................................................................ 13

*Hodge v. N. Carolina Dep't of Pub. Safety*,
    No. 5:19-CV-478-D, 2024 WL 499523 (E.D.N.C. Feb. 8, 2024) ................................. 19

*Kidwell v. Transp. Com. Int'l Union*,
    946 F.2d 283 (4th Cir. 1991) ........................................................................................ 11

*Krakauer v. Dish Network, L.L.C.*,
    925 F.3d 643 (4th Cir. 2019) ................................................................. 8, 15

*McLaurin v. Prestage Foods, Inc.*,
    271 F.R.D. 465 (E.D.N.C. 2010) ............................................................. 10, 11

*Mebane v GKN Driveline N.A., Inc.*,
    No. 1:18-CV-892, 2022 WL 16961496 (M.D.N.C. Nov. 16, 2022) ................................ 9

*Olvera-Morales v. Intern. Labor Mgmt. Corp.*,
    246 F.R.D. 250 (M.D.N.C. 2007) ................................................................ 14

*Perez v. Mountaire*,
    650 F.3d 350 (4th Cir. 2011) ................................................................... 16

*Rodger v. Electronic Data Systems Corp.*,
    160 F.R.D. 532 (E.D.N.C. 1995) ................................................................ 10

*Rodriguez v. Flowers Foods, Inc.*,
    No. 4:16-CV-245, 2016 WL 7210943 (S.D. Tex. Dec. 13, 2016) ................................ 9

*Roldan v. Bland Landscaping Co., Inc.*,
    341 F.R.D. 23 (W.D.N.C. 2022) ............................................................... 8, 9

*Romero v. Mountaire Farms, Inc.*,
    796 F. Supp. 2d 700 (E.D.N.C. June 9, 2011) ........................................... 14, 15, 21

*Sharp Farms v. Speaks*,
    917 F.3d 276 (4th Cir. 2019) ................................................................... 14

*Stacy v. Jennmar Corp.*,
    No. 1:21-CV-15, 2025 WL 2795303 (W.D. Va. Sept. 30, 2025) ................................ 18

*Stafford v. Bojangles*,
    123 F.4th 671 (4th Cir. 2024) .......................................................... 1, 15, 16, 18

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ........................................................................ 11, 15

*Velasquez-Monterrosa,* v. *Mi Casita Restaurants*,
    No. 5:14-CV-448-BO, 2016 WL 1703351 (E.D.N.C. Apr. 27, 2016) ........................ 14, 19

*Wal–Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ........................................................................ 10, 11

**Statutes**

N.C. Gen. Stat. § 95-25.1 ............................................................................... 1

N.C. Gen. Stat. § 95-25.13 ........................................................................... 12

N.C. Gen. Stat. § 95-25.22 ........................................................................... 12

N.C. Gen. Stat. § 95-25.6 ............................................................................. 12

N.C. Gen. Stat. § 95-25.7 ............................................................................. 12

**Other Authorities**

2 W. Rubenstein, Newberg on Class Actions § 4:50 (5th ed. 2012) ................................. 11

**Rules**

Fed. R. Civ. P. 23(a).............................................................................passim

Fed. R. Civ. P. 23(b)(3).................................................................. 1, 15, 19, 20

Fed. R. Civ. P.(g)......................................................................................... 14

Case 1:23-cv-00585-CCE-LPA    Document 129    Filed 12/23/25    Page 6 of 31

# I.    <u>INTRODUCTION</u>[1]

Named Plaintiffs Tameka Ferges and Darrick Paylor[2] brings this Motion for Class Certification under the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.1, *et seq*, on behalf of the employees ("Plaintiffs" or "employees") affected by Defendant GKN Driveline North America, LLC's ("Defendant's") companywide policies of failing to compensate manufacturing employees for all hours worked, specifically, Defendant's Post-2020 Policy involving suffered or permitted off-the-clock required compensable activities (i.e. pre- and post-shift activities and working meal breaks). Such failures resulted in unpaid wages, at the promised hourly or straight-time rate(s), for hours worked during less than 40-hour workweeks and promised premium rates at time and one-half for all hours worked in excess of 40 hours per week in violation of GKN's policies and thus in violation of the NCWHA. *See* N.C. Gen. Stat. §§ 95-25.1 *et seq.*  Plaintiffs move for class certification of their NCWHA class claims under Fed. R. Civ. P. 23(a) and (b)(3), specifically of three defined classes[3]:

## <u>Post-2020 Off-the-Clock ("OTC") Pre-Shift Class</u>

All nonexempt hourly employees who have worked at Defendant GKN's North Carolina facility in Roxboro on the manufacturing floor at any time between January 1, 2020, through the present who may have been subjected

---

[1] Unless otherwise stated, docket references are to the *Ferges* docket, No. 1:23-CV-585.

[2] Plaintiffs have a pending motion for leave to amend their complaint to add additional Named Plaintiffs, *see* Dkt. 124.

[3] Plaintiffs refined their proposed Rule 23 class definitions to comply with *Stafford v. Bojangles*, 123 F.4th 671 (4th Cir. 2024). Instead of the vague allegations of common policies that the court took issue with in *Stafford*, Named Plaintiff alleges specific misconduct, namely Defendant's failure to pay for off-the-clock work, and specifically identifies the time in which the off-the-clock work was performed, allowing putative class members to readily determine whether they are appropriate class members.

1

to Off the Clock ("OTC") required work activities such as obtaining and putting on personal protective equipment ("PPE"), gathering materials, documenting production or speaking to coworkers about production issues at least once prior to the start of their shift (the "Pre-Shift OTC Work Class").

### Post 2020 OTC Post-Shift Class

All nonexempt hourly employees who have worked at Defendant GKN's North Carolina facility in Roxboro on the manufacturing floor between January 1, 2020, through the present who may have been subjected to Off the Clock ("OTC") required work activities such as cleaning workstations, talking to coworkers about production, and removing and/or disposing of personal protective equipment ("PPE") at least once following the end of their shift (the "Post-Shift OTC Work Class").

### Post-2020 OTC Working Meal Break Class

All nonexempt hourly employees who have worked at Defendant GKN's North Carolina facility in Roxboro on the manufacturing floor between January 1, 2020, through 2023 or the date on which GKN began paying hourly employees for their meal breaks, who may have been subjected to Off the Clock ("OTC") required work activities such as removing and disposing of personal protective equipment ("PPE") and washing hands of hazardous chemicals ultimately reducing GKN's promised "duty free" thirty (30) minute meal break policy, at least once during their meal break (the "Meal Break OTC Work Class").

Named Plaintiffs also seek to be appointed as class representatives as well as the appointment of Plaintiffs' Counsel as Class Counsel.

## II.  FACTUAL BACKGROUND

### A.  Employees Were Subject to the Same Common Timekeeping Practices and Compensation Policies.

Defendant promises to pay its Employees for all hours worked and nominally prohibits off-the-clock work.[4] However, beginning in early 2020, Defendant initiated a

---

[4] Dkt. 70-11, Attendance Company Policy, at 3 ("GKN Automotive pays employees for all time worked. Off-the-clock work is strictly prohibited.").

2

policy regarding time records, meal and rest breaks,[5] and a revised attendance policy[6] that virtually requires off-the-clock work. Despite a policy that GKN promises to pay for all hours worked, these revised post-2020 policies fail to ensure Employees receive compensation for all hours worked.

### 1. Defendant's Pre-Shift Timekeeping Policies

Generally, Defendant required its Employees to "clock in at the beginning of their shift and clock out at the end of their shift."[7] However, Defendant required that Employees "may not clock in more than 3 minutes prior to the start of his/her shift."[8] Still, Defendant required its Employees "to be at their work station (or the designated [sic] meeting place where applicable) at the start of their shift."[9] Defendant's timekeeping policies do not mention or account for any required preparatory work, such as putting on personal protective equipment ("PPE").[10]

If an Employee clocked in earlier than three minutes prior to their shift start, the Employee would be subject to discipline.[11]

### 2. Defendant's Post-Shift Timekeeping Policies

---

[5] Dkt. 70-12, Time Records, Meal & Rest Periods Company Policy.

[6] Dkt. 70-11, Attendance Company Policy.

[7] Dkt. 70-11, Attendance Company Policy, at 3.

[8] *Id.*

[9] *Id.*

[10] *See id*.; *see also* Dkt. 70-8 at 16 (GKN handbook outlining PPE be worn on manufacturing floor); Dkt. 127-3, Justin LaQuay ("LaQuay Depo."), at 45:19-46:3 (HR Project Specialist Justin LaQuay testifying that he is "not aware" of any GKN policy requiring employees clock in before putting on PPE).

[11] Dkt. 70-11, at 4-5 (penalty schedule for clocking in early and clocking out after the end of a shift).

Defendant initiated a similar policy with regard to post-shift timekeeping.[12] Defendant permitted Employees to clock out up to three minutes before the end of their shift.[13] However, clocking out four or more minutes early would result in discipline.[14]

A similar grace period was not applied to clocking out after an Employee's shift had ended.[15] If an Employee clocked out after their shift ended, they would be subject to discipline.[16] Further, if Employees clocked out after the end of their shift *at all* they would be given a quarter of a point.[17] Employees were strictly required to clock in and clock out only at the beginning and end of their shifts.[18]

### 3. Defendant's Meal Break Policies

Defendant promised to provide all hourly employees "with a 30-minute duty-free meal period."[19] Pursuant to the policy, Employees are promised to be "completely relieved of their job responsibilities during their meal period."[20] This meal period was to be unpaid.[21] Defendant required Employees to clock out for their meal period exactly at its

---

[12] Dkt. 70-12, Time and Break Policy, at 2.
[13] *Id*. ("An employee may clock out up to three (3) minutes prior to the end of his/her shift.").
[14] *Id*.
[15] *Id*. ("Employees may not clock out after the end of the shift unless the employee has received approval from his/her manager to continue work after the end of his/her shift.")
[16] *Id*. ("If an employee clocks out after the end of the shift without approval or four (4) or more minutes prior to the end of the shift without approval, the employee may be subject to discipline.").
[17] Dkt. 70-11, Attendance Policy at 5 (a quarter point received for "Clocking out after the end of the shift.").
[18] *Id*. at 3 ("Hourly employees are required to clock in at the beginning of their shift and clock out at the end of their shift.").
[19] *Id*.
[20] *Id*.
[21] *Id*.

4

start and clock in exactly at its end.[22] Employees who took more than 30 minutes for their meal period or do not clock out for their meal periods could be subject to discipline.[23]

### 4. Defendant's Policies Applied to All Employees Equally, and Employees Performed Similar Job Duties

Plaintiffs worked for Defendant as hourly, non-exempt employees responsible for operating machines to produce automotive parts along production lines at Defendant's Roxboro manufacturing facility.[24] Plaintiffs' duties generally included similar tasks related to the manufacturing of automotive parts.[25] Plaintiffs performed similar duties and worked similar hours.[26] Most importantly, all Employees were subject to Defendant's same policies and practices that encouraged off-the-clock work.[27]

### B. Employees Performed Unpaid Work Beyond Scheduled Shift Times.

---

[22] *Id*. at 3-4.

[23] *Id*. at 4.

[24] *See* Dkt. 70-3, Heather Weis (Corporate Manager) ("Weis Depo."), at 28:23-30:7 (estimating 75% of Defendant's hourly employees operate on the manufacturing line); Dkt. 70-4, Frances Lee (HR Director for Roxboro) ("Lee Depo."), at 144:2-22 (most employees are machine operators). *See also* Dkt. 70-19 ¶ 1, Opt-In Rhonda Johnson; Dkt. 70-20 ¶ 1, Opt-In Tamika Brandon; Dkt. 70-21 ¶ 1, Opt-In Tonya Farmer; Dkt. 70-22 ¶ 1, Opt-In Shantiega Ford; Dkt. 70-23 ¶ 1, Opt-In Gregory Keever; Dkt. 70-24 ¶ 1, Opt-In Susan Long; Dkt. 70-25 ¶ 2, Opt-In Joseph Hairston; Dkt. 70-26 ¶ 1, Opt-In Tamara Barton; Dkt. 70-27 ¶ 1, Opt-In Tracy Booze; Dkt. 70-28 ¶ 1, Opt-In Antwan Glover.

[25] Dkt. 70-17, Named Plaintiff Tameka Ferges ("Ferges Depo."), at 28:14-30:13 (explaining work duties); Dkt. 125-6, Glover Depo., at 55:6-56:9 (same); Dkt. 70-19 ¶¶ 2-3 (same); Dkt. 70-20 ¶ 2 (same); Dkt. 70-21 ¶ 2 (same); Dkt. 70-22 ¶ 2 (same); Dkt. 70-23 ¶¶ 1-4 (same); Dkt. 70-24 ¶ 2 (same); Dkt. 70-25 ¶¶ 2-3 (same); Dkt. 70-26 ¶ 2 (same); Dkt. 70-27 ¶ 2 (same); Dkt. 70-28 ¶ 2 (same).

[26] *Supra* note 25; *see also* Dkt. 70-17, Ferges Depo., at 35:20-38:12 (8.5 hour shifts and 10-12 hour shifts); Dkt. 70-22 ¶ 3 (same); Dkt. 70-23 ¶ 5 (same); Dkt. 70-24 ¶¶ 3-4 (same); Dkt. 70-25 ¶¶ 5-6 (same);, Dkt. 70-27 ¶ 3 (same); Dkt. 70-19 ¶ 4 (8.5 hour shifts 5-7 days straight); Dkt. 70-28 ¶ 3 (same); Dkt. 70-26 ¶¶ 3-4 (same); Dkt. 70-20 ¶¶ 3-4 (same); Dkt. 70-21 ¶ 3 (8.5 hour shifts).

[27] *See* Dkt. 70-11, Attendance and Punctuality for Hourly Employees (Feb. 2020); Dkt. 70-12, Time Records, Meal & Rest Periods (March 2020); Dkt. 70-8 at 16 (PPE requirements).

5

### 1. Employees Performed Pre-Shift Off-the-Clock Work.

Despite Defendant's written policies, Employees would regularly arrive at the Roxboro plant anywhere from ten to thirty minutes before the start of their shift.[28] Employees needed to begin work before their scheduled start times to perform pre-shift activities, including but not limited to attending pre-shift meetings, communicating with the previous shift about issues, and donning required personal protective equipment ("PPE") consistent with Defendant's written PPE policies.[29] Notably, Defendant required that Employees be at their machine ready to work at the start of their shift, and Employees who were not ready would be disciplined.[30]

### 2. Employees Performed Post-Shift Off-the-Clock Work.

Similarly, Employees would regularly be required to work beyond their scheduled shift time in order to complete their tasks for the day.[31] Employees would regularly have

---

[28] Dkt. 70-17, Ferges Depo., at 176:21-179:14 (20-30 minutes pre-shift work required every shift, including meeting with supervisors and preparing machines); Dkt. 125-6, Glover Depo., at 90:6-10 (arriving fifteen minutes early to prepare work area); Dkt. 125-4, Ford Depo., at 38:9-17 (getting to work early to put on PPE); Dkt. 70-23 ¶ 7 (explaining pre-shift work); Dkt. 70-24 ¶¶ 7-8 (same); Dkt. 70-19 ¶¶ 6-7 (same); Dkt. 70-28 ¶¶ 5-7 (same); Dkt. 70-20 ¶¶ 7-10 (same); Dkt. 70-21 ¶¶ 6-8 (same); Dkt. 70-22 ¶¶ 5-7 (same); Dkt. 70-25 ¶¶ 11-13 (same); Dkt. 70-26 ¶ 7 (same); Dkt. 70-27 ¶¶ 5-8 (same).

[29] *Supra* note 28; Dkt. 70-8 at 16 (GKN handbook outlining PPE be worn on manufacturing floor); Dkt. 125-4, Ford Depo., at 135:23-136:15 (putting on PPE, going to production floor, and then clocking in); Dkt. 125-5, Marsh Depo., at 38:08-40:11 (explaining that colleagues often requested assistance, requiring five to ten minutes of work before clocking in); 124:05-125:24 (detailing how frequently he was required to assist his colleagues before shift start time); Dkt. 70-20 ¶¶ 7-8, 10 (required to don PPE before going to production floor); Dkt. 70-21 ¶ 6 (same); Dkt. 70-22 ¶¶ 5-6 (same); Dkt. 70-26 ¶ 7 (same); Dkt. 70-27 ¶ 6 (same).

[30] Dkt. 70-11, Attendance Policy 2020, at 4 (Defendant's policy applies ½ disciplinary point to Employees "[c]locking in any time after the start of the shift up to 60 minutes after the start of the shift"); *id.* at 3 ("Employees are expected to be at their work station [ ] at the start of their shift.").

[31] Dkt. 70-17, Ferges Depo., at 189:24-194:22 (15-20 minutes post-shift work required, including "handoff meetings," cleaning, preparing presentable floors for company representatives from

6

to spend time removing PPE, cleaning, completing additional work tasks, or facilitating the shift transitions.[32] Management was aware of, and often directed, this practice.[33] Despite this knowledge, Defendant did not compensate Employees for hours worked beyond their scheduled shifts.[34]

### 3. Employees Worked Through All or Part of Unpaid Meal Breaks.

Despite Defendant's promise to every hourly Employee that they would receive a meal break for each shift,[35] Employees regularly needed to work through all or part of their meal breaks in order to wash oil, grease, and hazardous chemicals from their hands and body and navigate far distances from their departments to break rooms, regularly reducing their meal breaks by approximately 10 to 15 minutes, particularly because Employees

---

Honda, Toyota, etc., and completing machine work); Dkt. 125-5, Marsh Depo., at 73:11-74:8 (punching out and getting called back to troubleshoot issues); Dkt. 125-4, Ford Depo., at 67:3-25 (clocking out, washing oil and grease off hands and removing PPE); Dkt. 70-19 ¶¶ 8-10 (describing post-shift activities); Dkt. 70-20 ¶¶ 11-13 (same); Dkt. 70-22 ¶¶ 8-10 (same); Dkt. 70-23 ¶¶ 8-9 (same); Dkt. 70-24 ¶¶ 9-10 (same); Dkt. 70-25 ¶¶ 14-16 (same); Dkt. 70-26 ¶¶ 12-14 (same); Dkt. 70-27 ¶¶ 9-10 (same).

[32] *Supra* note 31.

[33] Dkt. 70-17, Ferges Depo., at 84:21-86:13 (complained to HR about unpaid hours worked); Dkt. 125-4, Ford Depo., at 70:21-71:21 (complained about having to remove PPE after clocking out, but practice continued); Dkt. 70-19 ¶¶ 11-12 (complaints about paychecks not reflecting all hours worked went unresolved); Dkt. 70-20 ¶¶ 23-24 (same); Dkt. 70-21 ¶¶ 4-5, 14 (same); Dkt. 70-22 ¶¶ 16-17 (same); Dkt. 70-23 ¶¶ 15 (same); Dkt. 70-24 ¶ 17 (same); Dkt. 70-25 ¶¶ 13, 16, 25-28 (same); Dkt. 70-26 ¶¶ 11, 14, 21-26 (same); Dkt. 70-27 ¶¶ 8, 10, 21-22 (same); Dkt. 70-28 ¶¶ 7, 10-11 (same).

[34] *Supra* note 33.

[35] Dkt. 70-8, GKN Employee Handbook 2020, at 18; Dkt. 70-11, Attendance Policy 2020 at 3-4 (stating, *inter alia*, "[h]ourly employees are completely relieved of their job responsibilities during their meal period"); Dkt. 70-12, Time Records Policy 2020 3 ("Employees are completely relieved of their job responsibilities during their meal period.").

needed to be back from meal breaks within thirty minutes.[36] Thus, rarely, if ever, were

Employees allowed to enjoy the full 30 minute meal break they were promised.[37]

## III. <u>LEGAL ARGUMENT</u>

### A. <u>Plaintiffs' NCWHA Claims Should Be Certified as a Class Action Under Fed. R. Civ. P. 23 (a) and (b)(3).</u>

Plaintiffs seek class certification for Defendant's failure to pay Plaintiffs for all

accrued and earned regular and/or straight-time wages, specifically for the three classes

identified *supra*. Rule 23 provides a class should be certified where plaintiffs satisfy the

four elements of Rule 23(a) and one of the three requirements of Rule 23(b). Fed. R. Civ.

P. 23; *see Gaxiola v. Williams Seafood of Arapahoe, Inc.*, 776 F. Supp. 2d 117 (E.D.N.C.

2011). As the record here satisfies the Rule 23 requirements, this matter should be certified.

#### 1. <u>Plaintiffs Satisfy the Rule 23(a) Requirements.</u>

To obtain class certification under Rule 23, a prospective class must satisfy four

prerequisites of numerosity, commonality, typicality, and adequacy. *See* Fed. R. Civ. P.

23(a); *see also Roldan v. Bland Landscaping Co., Inc.,* 341 F.R.D. 23, 29 (W.D.N.C. 2022)

(citing *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 654 (4th Cir. 2019)). The Fourth

---

[36] Dkt. 70-17, Ferges Depo., at 185:20-187:02 (post-2020 required work through meal breaks, including "running the line" and "helping with maintenance"); Dkt. 125-6, Glover Depo., at 112:6-21 (clocking out, washing hands, and walking to break room, losing 10 minutes of break); Dkt. 125-4, Ford Depo., at 62:7-22 (clocking out, removing oil and grease from hands, navigating crowds of people also taking lunch break, losing 15 to 20 minutes of break); Dkt. 125-5, Marsh Depo., at 130:16-131:9 (same); Dkt. 125-4, Ford Depo., at 65:6-13 (returning from lunch five minutes early to "beat traffic" at the time clock and be back at machine on time); Dkt. 70-19 ¶¶ 14-17 (describing off-the-clock work required during meal breaks); Dkt. 70-20 ¶¶ 17-21 (same); Dkt. 70-22 ¶¶ 14-15 (same); Dkt. 70-23 ¶¶ 13-14 (same), Dkt. 70-24 ¶¶ 15-16 (same); Dkt. 70-25 ¶¶ 20-24 (same); Dkt. 70-27 ¶¶ 16-20 (same).
[37] *See supra* note 36.

Circuit has also recognized that Rule 23 "contains an implicit threshold requirement" of "ascertainability," that the members of a proposed class be "readily identifiable" by way of reference to objective criteria. *See EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014).

### i. *The Proposed Classes Are Sufficiently Numerous and Ascertainable*

"Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable.'" *See Roldan,* 341 F.R.D. at 31 (quoting *EQT Prod. Co.*, 764 F.3d at 358). Under this "ascertainability" principle, "a class cannot be certified unless a court can readily identify the class members in reference to objective criteria." *EQT Prod. Co.*, 764 F.3d at 358.

Here, each of Plaintiffs' proposed classes is ascertainable considering testimony from Named Plaintiff and opt-in Plaintiffs regarding any work conducted OTC pre-shift,[38] post-shift,[39] or during meal breaks.[40] *See Mebane v GKN Driveline N.A., Inc.,* No. 1:18-CV-892, 2022 WL 16961496, at *3 (M.D.N.C. Nov. 16, 2022) (finding ascertainability requirement met based on **representative** testimony of employees); *Rodriguez v. Flowers Foods, Inc.*, No. 4:16-CV-245, 2016 WL 7210943, at *5 (S.D. Tex. Dec. 13, 2016) (collecting cases finding that "a proposed class satisfied the ascertainability standard even though individualized testimony would be required to identify class members"). Given that work was performed OTC, the "lack of recordkeeping . . . require[s] some representative

---

[38] *See supra* § II(B)(1).
[39] *See supra* § II(B)(2).
[40] *See supra* § II(B)(3).

testimony of employees" be used to establish ascertainability. *See Mebane*, 2022 WL 16961496, at *3. As cited above, such testimony exists here and, thus, the ascertainability requirement is satisfied for the OTC claims.

Similarly, the numerosity requirement of Rule 23(a)(1) mandates the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). No specific number of members is necessary; instead, the decision must be based upon the particular facts of each case. *See Gaxiola*, 776 F. Supp. 2d at 130 (citing *Rodger v. Electronic Data Systems Corp.*, 160 F.R.D. 532 (E.D.N.C. 1995)). While there is no numerical requirement, as few as eighteen (18) class members may satisfy the numerosity requirement. *See McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 475 (E.D.N.C. 2010). Here, evidence shows several hundred putative class members.[41] Therefore, the numerosity requirement of Rule 23 (a)(1) is easily satisfied.

> ii. *The Proposed Classes Satisfy the Commonality and Typicality Requirements.*

Rule 23(a)(2) requires a determination that there are "questions of law or fact, common to the class" to unite the potential plaintiffs in the case. *See* Fed. R. Civ. P. 23(a)(2). What matters most in determining "commonality" in the context of class certification is "the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *See Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The analysis of commonality and typicality of representation often involves

---

[41] Dkt. 70-3 ("Weis Depo."), at 27:7-20 (estimating 400 Roxboro Employees); Dkt. 70-5 Barbara Waldron for Roxboro ("Waldron Depo. Roxboro"), June 3, 2024, at 75:21-76:09 (same).

overlapping facts, and the two requirements tend to merge. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 158 n. 13 (1982); *see also Kidwell v. Transp. Com. Int'l Union*, 946 F.2d 283, 305 (4th Cir. 1991).

Moreover, "the threshold requirements of commonality and typicality are not high; Rule 23(a) requires only that resolution of the common questions affect all or a substantial number of the class members." *See McLaurin*, 271 F.R.D. 465, 475-76 (citing *Brown v. Nucor Corp.*, 576 F.3d 149, 153 (4th Cir. 2009)). These requirements may be satisfied even if factual distinctions between the claims of named plaintiffs and of other class members exist. *See Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 344 (4th Cir. 1998).

Rather, "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Dukes*, 564 U.S. at 350; *see generally* Fed. R. Civ. P. 23(a)(2). Courts in this district assess this element in NCWHA wage claims by determining whether company-wide wage policies injured the proposed class; the commonality requirement is therefore satisfied if "the resolution of the common questions affect all or a substantial number of the class members." *See McLaurin*, 271 F.R.D. at 475.  In this context a common question is one where "the *same* evidence will suffice for each member to make a *prima facie* showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012)).

Here, despite Defendant's written policies to compensate Plaintiffs for *all* hours

11

worked,[42] Defendant has a practice of requiring Plaintiffs to work OTC either pre-shift, post-shift, or during meal breaks to meet Defendant's production goals in violation of N.C. Gen. Stat. §§ 95-25.6, 95-25.7, 95-25.13 and 95-25.22. Specifically, Defendant has policies and requirements for workers including, but not limited to, donning and doffing PPE, cleaning and maintaining equipment, and being ready to begin machine work precisely at shift start time or upon their return from lunch that force employees to perform compensable activities before shift start times, during meal breaks, and after shift end times.[43] These policies cause a common injury among putative Plaintiffs in each class: performing compensable activities OTC at certain times of day for which they are not paid.

This Court certified a similar matter in January of 2019, *Adams v. Sitel Operating Co.*, No. 1:16-CV-1051, 2019 WL 13296014 (M.D.N.C. Jan. 24, 2019) (Biggs, L.J.), where the *Adams* plaintiffs sought Rule 23 certification on wage and hour claims, specifically related to the defendant failing to compensate plaintiffs for OTC work. *See id.* at *4. This Court found commonality, noting that the plaintiffs "suffered the same injury—that is, [Defendant's] failure to compensate its [employees] . . . for off-the clock work performed." *Id.* Much like the plaintiffs' claims in *Adams*, Plaintiffs here have suffered the same injury related to Defendant's failure to pay for OTC compensable work done pre-shift, post-shift, and during lunch breaks. *See id.* Given the common injury, Plaintiffs have met the

---

[42] *See* Dkt. 70-11, Attendance and Punctuality Policy (Feb. 2020), at 3 (GKN002547) ("2020 Time Reporting Policy") ("**GKN [] pays employees for all time worked**."); Dkt. 70-12, Time Records, Meal, [] Policy (Mar. 2020), at 3 (GKN002558) (same); Dkt. 70-3, Weis Depo., at 112:20; Dkt. 70-5, Waldron Depo. Roxboro, at 140: 9–17.
[43] *Supra* § II.

commonality requirement of Rule 23(a).

The typicality requirement of Rule 23(a)(3) is met when the claims asserted by the named plaintiff arise from the same course of conduct, and are based on the same legal theories, as the claims of the unnamed class members, notwithstanding factual differences in the amount of damages claimed. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 428 (4th Cir. 2003). Typicality ensures that a representative "possess[es] the same interest and suffer[s] the same injury as the class members." *Falcon*, 457 U.S. at 156; *see also Wade v. JMJ Enters.*, No. 1:21-CV-506, 2023 WL 6391683 at *5 (M.D.N.C. Sept. 30, 2023) (typicality will be met so long as the class representative is "squarely aligned in interest with the represented group")*.*

Here, a comparison of Named Plaintiff's claims with opt-in plaintiffs' and other employees' personal experiences, as well as Plaintiffs' Expert Report, shows the typicality requirement is easily met.[44] Named Plaintiff, like other Employees, worked for Defendant subject to the same unlawful policies violating the NCWHA, such as the common practice of not compensating employees at the appropriate promised and/or premium hourly rate(s) for all hours worked.[45]

---

[44] *Compare* Dkt. 70-17, Ferges Depo., at 169:5-13 (identifying policies forbidding clocking in three minutes prior to shift start and clocking out after shift end); *id.* at 177:4-13 (twenty-five minutes of pre-shift work); *id.* at 194:4-196:13 (sweeping after shift end time); *id.* at 186:5-187:2 (working through lunch break) *with* Dkt. 70-30 ¶ 58 (Plaintiffs' expert report estimating employees at the Roxboro plant worked 11.39 minutes OTC during meal breaks and 39 minutes OTC before and after shifts). *See also* Dkt. 70-17, Ferges Depo., 189:4-7 (Named Plaintiff noting she believes she was not paid for all actual hours worked).

[45] *See generally id.* Despite Named Plaintiff Paylor's employment ending prior to 2020, Named Plaintiff Ferges can still represent putative Rule 23 class members' interests.

13

Lastly, Rule 23(a) requires "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); (g)(4); *see also Sharp Farms v. Speaks*, 917 F.3d 276, 290 & n.7 (4th Cir. 2019). Specifically, Plaintiffs must demonstrate that, as class representative, they (1) "will vigorously prosecute the interests of the class through qualified counsel," and (2) have "common interests with unnamed members of the class." *See Olvera-Morales v. Intern. Labor Mgmt. Corp.*, 246 F.R.D. 250, 258 (M.D.N.C. 2007).  Plaintiffs have the same interests as all class members: recovering all wages for uncompensated hours worked, including earned, accrued, and unpaid straight and overtime wages.[46] Likewise, class counsel must be "competent and qualified" and able to "vigorously prosecute the class's interests." *See Alfaro Zelaya v. A+ Tires, Brakes, Lubes, and Mufflers, Inc.*, No. 5:13-CV-810, 2015 WL 5703569, at *5 (E.D.N.C. Sept. 28, 2015); *see also Velasquez-Monterrosa,* v. *Mi Casita Restaurants,* No. 5:14-CV-448-BO, 2016 WL 1703351 at *5 (E.D.N.C. Apr. 27, 2016); *Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 715 (E.D.N.C. June 9, 2011). Plaintiffs' counsel is qualified to be appointed as class counsel because The Law Offices of Gilda A. Hernandez, PLLC has extensive experience litigating complex wage and hour class and collective actions.

Accordingly, Named Plaintiffs and The Law Offices of Gilda A. Hernandez, PLLC will fairly and adequately represent the proposed class in accordance with Rule 23(a)(4).

2.  <u>The Proposed Class Satisfies the Requirements of Rule 23(b)(3).</u>

---

[46] *See supra* note 44.

Having determined that the requirements of Rule 23(a) have been met, the Court must then determine whether Plaintiff's NCWHA claims fit into one of the four categories of Rule 23(b). Fed. R. Civ. P. 23; *Krakauer,* 925 F.3d at 655.

Rule 23(b)(3) permits a class action where the prerequisites of Rule 23(a) are met, and two additional criteria are satisfied: (1) that questions of law or fact common to members of the class predominate over any questions affecting only individual members and (2) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See* Fed. R. Civ. P. 23(b)(3); *Romero*, 796 F. Supp. 2d at 700. Here, Plaintiffs seek class certification under Rule 23(b)(3).

> i. *Common Questions of Law and Fact Predominate Over*
> *Any Individual Questions*

The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *See Amchem Prods. v. Windsor,* 521 U.S. 591, 623 (1997); *Stafford v. Bojangles*, 123 F.4th 671, 679 (4th Cir. 2024). Questions of law or fact common to putative class members must predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). To satisfy the predominance requirement, "plaintiffs' claims need not be identical" and certain important issues such as damages can be tried separately. *See Krakauer*, 925 F.3d at 659; *Tyson Foods*, 577 U.S. at 453.

In its recent decision in *Stafford*, the Fourth Circuit addressed commonality and predominance in the context of OTC claims. *See Stafford*, 123 F.4th at 679–80 (noting that the commonality and predominance requirements are "necessarily intertwined"). The

15

Fourth Circuit held that evidence of commonality "may come in many forms" but must be more than a "broad theoretical policy." *Id.* at 680. Specifically, in *Stafford*, plaintiffs attempted to prove commonality using a pre-shift "Opening Checklist" that allegedly showed a policy of OTC work pre-shift, during shift, and post-shift. *Id.* at 679–80. The Fourth Circuit reversed the district court's finding of commonality and predominance because the Opening Checklist could not prove the "diversity of claims," notably the "claims of unpaid off-the-clock wages at any other time" beyond pre-shift. *Id.*

Here, Named Plaintiff is pursuing three classes, each of which is made up of employees with concrete evidence of OTC compensable work performed at certain times during the workday. *See Perez v. Mountaire*, 650 F.3d 350, 363 (4th Cir. 2011) (defining compensable work activities).

### a. Pre-Shift OTC Work Class

Defendant has a clear common policy that employees cannot clock in more than three minutes before shift start time.[47] Defendant also has policies requiring pre-shift activities such as donning PPE and preparing equipment so that work can begin precisely at shift start time.[48] Employees are disciplined for failure to be at their work station at shift start time and for clocking in more than three minutes before shift start time.[49] This necessarily leads to Plaintiffs performing OTC compensable activities before shift start time.[50]Accordingly, there is concrete common evidence of Defendant's practice of

---

[47] *Supra* § II(A)(1).
[48] *Id.*
[49] *Id*.
[50] *Supra* § II(B)(1).

requiring pre-shift compensable activities be performed OTC.

### b. Post-Shift OTC Work Class

Defendant has a clear common policy that employees cannot clock out after shift end time.[51] However, Defendant requires post-shift activities including, but not limited to, doffing PPE, cleaning up workstations, and working until production quotas are met.[52] This necessarily leads to Plaintiffs performing off-the-clock compensable activities after shift end time.[53] Accordingly, there is concrete common evidence of Defendant's practice to require performance of off-the-clock post-shift compensable activities.

### c. Meal Break OTC Work Class

Defendant has a clear common policy requiring that employees take a thirty (30) minute unpaid meal break.[54] Defendant requires employees to clock out for this meal break and clock back in before beginning work.[55] After clocking out, employees have to wash off hazardous chemicals and walk to and from the cafeteria, often only receiving ten (10) to fifteen (15) minutes for an actual meal break.[56] Defendant penalizes employees who return late by even one (1) minute.[57] These policies necessarily led to Plaintiffs using their meal break to perform compensable work activities so that they could be back at their work station on time.[58] Thus, there is concrete common evidence of Defendant's practice of

---

[51] *Supra* § II(A)(2).
[52] *Supra* § II(B)(2).
[53] *Id.*
[54] *Supra* § II(A)(3).
[55] *Id.*
[56] *Supra* § II(B)(3).
[57] *Supra* § II(A)(3).
[58] *Supra* § II(B)(3).

requiring OTC compensable activities during meal breaks for which Plaintiffs were not paid.

        d.     *The Proposed Classes Meet the Predominance Requirement of Rule 23(b)(3) and* Stafford.

While the Fourth Circuit did not specifically identify the types of evidence deemed sufficient to satisfy commonality and predominance, since *Stafford*, district courts have found, for example, evidence of employees arriving at the work facility thirty (30) minutes early each day sufficient to establish a possible practice of requiring OTC work. *See Stacy v. Jennmar Corp.*, No. 1:21-CV-15, 2025 WL 2795303, at *7 (W.D. Va. Sept. 30, 2025) (denying motion to decertify after considering *Stafford*). As identified above, in this case, there is far more evidence than what is cited as sufficient in *Stacy*.[59] Moreover, courts within the Fourth Circuit have found the Rule 23(b)(3) predominance requirement is met in similar matters involving pre-shift, meal break, and post-shift OTC work. *See Adams*,

---

[59] While Defendant does not have a written policy requiring employees perform OTC work, Defendant maintains written policies regarding the PPE employees must wear *before* they get on the production floor when their shift begins. *See* Dkt. 70-8 at 16. Similarly, Defendant has written safety policies requiring cleaning, maintaining, storing and gathering equipment used during their shift. *Id*. There is a plethora of evidence establishing commonality and predominance, further satisfying any potential heightened requirement of such documentation to establish the same. To hold otherwise would foreclose wage and hour class actions where a defendant's unlawful policies stating that required work activities must be performed OTC are not written down. *See Barb,* 2024 WL 3292835 at *7. This goes against the clear policy of wage and hour laws as well as the Fourth Circuit to encourage class action litigation for wage and hour violations. *See Stafford*, 123 F.4th at 683 ("**Workers deserve every penny earned for the honest work they provide their employers, and aggregate litigation may often provide the best means through which to seek relief**."). Moreover, Defendant's policy regarding how employees clock in and out pre-shift, post-shift and during their lunch breaks has changed throughout the course of this litigation. Specifically, the new policies require that employees are only permitted to clock in three (3) minutes before shift start time and must clock out at shift end time, further corroborating an unspoken policy that the required activities must still be performed, but simply OTC. *Compare* Dkt. 70-9 (2018 policy) *with* 2020 Time Reporting Policy.

18

2019 WL 13296014, at *6; *Barb v. Heath Consultants, Inc.*, No. 1:23-CV-58, 2024 WL 3292835, at *7 (W.D. Va. July 3, 2024) (finding that, in the absence of a written policy, a practice of "demanding productivity requirements" coupled with timesheets and payroll policies, can satisfy the predominance requirement for an OTC work claim); *Hodge v. N. Carolina Dep't of Pub. Safety*, No. 5:19-CV-478-D, 2024 WL 499523, at *6 (E.D.N.C. Feb. 8, 2024). Accordingly, Plaintiffs contend that Defendant's written and unwritten policies, taken together, establish a concrete practice of requiring OTC compensable work for which Plaintiffs are not paid.

### ii. *A Class Action is the Superior Method for Litigating This Matter.*

The superiority question under Rule 23(b)(3) requires a court to consider whether a class action is superior to other methods of adjudication. *See* Fed. R. Civ. P. 23(b)(3); *Alfaro Zelaya*, 2015 WL 5703569, at *6. **The alternative to class action litigation in this case would be individual lawsuits filed by each class member, of which there are several hundred.** Thus, there is no doubt that litigating individually would be more burdensome on the putative class members and a less efficient use of judicial resources.

Additionally, Rule 23(b)(3)'s four non-exclusive factors are pertinent to the predominance and superiority determinations. *See* Fed. R. Civ. P. 23 (b)(3). The four factors are: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or

19

undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. *Id.*

With respect to the first factor, individualized lawsuits would be financially burdensome. The advantages of determining the common issues by means of a class action are evident, as all employees in the class could finalize their claims in *one* proceeding. *See Ceras-Campo v. WF P'ship,* No. 5:10-cv-215-BO, 2011 WL 588417, at *2 (E.D.N.C. Feb. 9, 2011). With respect to the second factor, none of the parties have indicated there is any similar ongoing litigation by the class members against Defendant related to Post-2020 claims for violations of the NCWHA.

With respect to the third factor, Defendant's facilities are located within this district, and all putative class members worked at these facilities within the relevant period. The United States District Court for the Middle District of North Carolina has been and will continue to be an appropriate forum for this matter.

With respect to the fourth factor, Plaintiffs believe this class action would involve hundreds of Plaintiffs, so it is readily manageable, particularly when compared to classes in larger cases that have been managed successfully. *See, e.g., Duhaime v. John Hancock Mut. Life Ins. Co.,* 177 F.R.D. 54, 62 (D. Mass. 1997) (overseeing a class of approximately 1.8 million). As such, Plaintiffs have shown that their NCWHA claims can properly be maintained as a Rule 23(b)(3) class action, and the Court should certify Plaintiffs' proposed NCWHA classes.

3. <u>Present Counsel Should Be Appointed Class Counsel.</u>

20

Should the Court grant certification, class counsel must be appointed. *See* Fed. R. Civ. P. 23 (g). Class counsel must be "qualified, experienced and generally able to conduct the proposed litigation." *See Romero*, 796 F. Supp. 2d at 715. Plaintiffs' counsel has handled this matter from the outset, investigating all claims. Counsel has handled numerous class actions and will commit the necessary resources to representing the class.[60] Plaintiff's counsel should therefore be appointed as class counsel.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request the Court grant the following relief: (1) certify this action as a class action under Rule 23(a) and (b)(3) for the NCWHA claims; (2) appoint Named Plaintiffs as class representatives; (3) appoint the Law Offices of Gilda A. Hernandez, PLLC as class counsel; (4) approve the proposed notice of this action and attached formed, *see* Dkt. 127-2[61] (5) production of names, job titles, dates of employment with Defendant, locations of employment with Defendant, last known mailing addresses, last-known cell numbers, home phone numbers, personal email addresses, dates of birth, and last four digits of SSNs of all putative plaintiffs within fifteen days of the Order; and (6) distribution of the Notice and forms via first class mail, email, text message, and Notice posting at each of Defendant's operating plants in Alamance, Sanford, and Roxboro, to all members of the certified class, with a reminder mailing to be sent 45-days after the initial mailing to all non-responding putative plaintiffs.

---

[60] *See* Dkt. 70-15 (Resume for Plaintiffs' Counsel).

[61] For efficiency, Plaintiffs propose a singular, hybrid notice to be sent to collective/class members.

21

Respectfully submitted this December 23, 2025.

/s/ *Gilda Adriana Hernandez*

Gilda A. Hernandez (NCSB No. 36812)
Matthew Marlowe (NCSB No. 60035)
Briahna B. Koegel (NCSB No. 62491)
Samuel Byron Frazelle (NCSB No. 59771)
Laura Fisher (NCSB No. 62357)
**THE LAW OFFICES OF GILDA A.**
**HERNANDEZ, PLLC**
215 S. Academy St.
Cary, NC 27511
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
mmarlowe@gildahernandezlaw.com
bkoegel@gildahernandezlaw.com
sbfrazelle@gildahernandlaw.com
lfisher@gildahernandlaw.com

*Attorneys for Plaintiffs*

22

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.3(D)(1)

I hereby certify that the foregoing complies with Local Rules 7.3(d)(1), as it contains 6,241 words, excluding parts of the memorandum that are exempted by LR 7.3(d)(1).

I certify that the foregoing is true and accurate.

Respectfully submitted this December 23, 2025.

*/s/ Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Matthew Marlowe (NCSB No. 60035)
Briahna B. Koegel (NCSB No. 62491)
Samuel Byron Frazelle (NCSB No. 59771)
Laura Fisher (NCSB No. 62357)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
215 S. Academy St.
Cary, NC 27511
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
mmarlowe@gildahernandezlaw.com
bkoegel@gildahernandezlaw.com
sbfrazelle@gildahernandlaw.com
lfisher@gildahernandlaw.com

*Attorneys for Plaintiffs*

23

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 23, 2025, the foregoing **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION UNDER FED. R. CIV. P. 23 AND FOR APPOINTMENT OF CLASS COUNSEL UNDER FED. R. CIV. P. 23(G)** was served in accordance with the Federal Rules of Civil Procedure on the following:

Paul DeCamp (Special Admission)
**EPSTEIN, BECKER & GREEN, P.C.**
1227 25th St., N.W., Suite 700
Washington, D.C. 20037
Tel: (202) 861-1819
Fax: (202) 296-2882
pdecamp@ebglaw.com

Adriana S. Kosovych (Special Admission)
Christopher Coyne (Special Admission)
Eduardo J. Quiroga (Special Admission)
Alexandria K. Adkins (Special Admission)
Christopher Dyess (Special Admission)
**EPSTEIN, BECKER & GREEN, P.C.**
875 Third Avenue
New York, NY 10022
Tel: (212) 351-4500
Fax: (212) 878-8600
akosovych@ebglaw.com
ccoyne@ebglaw.com
equiroga@ebglaw.com
aadkins@ebglaw.com
cdyess@ebglaw.com

Kevin S. Joyner
Vanessa N. Garrido
**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**
8529 Six Forks Road, Suite 600
Raleigh, North Carolina 27615
Tel: (919) 787-9700
Fax: (919) 783-9412
Kevin.joyner@ogletree.com
Vanessa.garrido@ogletree.com
*Attorneys for Defendant*

/s/ *Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB No. 36812)

24

Matthew Marlowe (NCSB No. 60035)
Briahna B. Koegel (NCSB No. 62491)
Samuel Byron Frazelle (NCSB No. 59771)
Laura Fisher (NCSB No. 62357)
**THE LAW OFFICES OF GILDA A.**
**HERNANDEZ, PLLC**
215 S. Academy St.
Cary, NC 27511
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
mmarlowe@gildahernandezlaw.com
bkoegel@gildahernandezlaw.com
sbfrazelle@gildahernandlaw.com
lfisher@gildahernandlaw.com

*Attorneys for Plaintiffs*